IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Michael Alonzo Robinson, Jr., | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | **1:16cv298 (AJT/IDD)** |
| | ) | |
| Harold W. Clarke, | ) | |
|     Respondent. | ) | |

<u>MEMORANDUM OPINION</u>

Michael Alonzo Robinson, Jr., a Virginia inmate proceeding <u>pro se</u>, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his convictions entered in the City of Richmond Circuit Court, Virginia. On May 9, 2015, respondent filed a Motion to Dismiss and Rule 5 Answer, with a supporting brief and exhibits. Dkt. Nos. 6, 7, 9, 10. Petitioner was given the opportunity to file responsive materials, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), and he filed a response. Accordingly, the matter is now ripe for disposition. For the reasons that follow, petitioner's claim must be dismissed.

**I. Background**

Petitioner is detained pursuant to a judgment of the City of Richmond Circuit Court entered on January 10, 2013. A jury convicted petitioner of first-degree murder, use of a firearm in the commission of a felony (four counts), abduction for pecuniary benefit (two counts), and robbery. Case Nos. CR12F2199, CR12F2200, CR12F3149-CR12F3154, and CR12F2765; <u>see also Robinson v. Commonwealth</u>, 762 S.E.2d 806, 807 (Va. Ct. App. 2014). The trial court imposed the jury's sentence of life plus 63 years of imprisonment. Dkt. No. 1 at 1.

The Virginia Court of Appeals' opinion dated September 16, 2014 and the record reflect

the following facts:

> The evidence established that on March 16, 2012, Jerrod Oliver was shot and
> killed in his house in the City of Richmond. [Petitioner], armed with a firearm,
> entered Oliver's house and threatened Oliver and a friend, Chaquetta Bowles,
> demanding money and a gun from Oliver. On March 21, 2012, the Richmond
> Metropolitan Multi–Jurisdictional Grand Jury returned indictments against
> [petitioner] for the first-degree murder of Oliver in violation of Code § 18.2–32
> and the use of a firearm in the commission of that murder in violation of Code §
> 18.2–53.1. On May 3, 2012, [petitioner] moved to review the multi-jurisdictional
> grand jury evidence pursuant to Code § 19.2-215.9,[1] or in the alternative, to
> dismiss the indictments if a transcript was unavailable.

---

[1] Code § 19.2-215.9 states, in relevant part:

> A. A court reporter shall be provided for a multi-jurisdiction grand jury to record,
> manually or electronically, and transcribe all oral testimony taken before a multi-
> jurisdiction grand jury, but such a reporter shall not be present during any stage of
> its deliberations. Such transcription shall include the original or copies of all
> documents, reports, or other evidence presented to the multi-jurisdiction grand
> jury. The notes, tapes, and transcriptions of the reporter are for the use of the
> multi-jurisdiction grand jury, and the contents thereof shall not be used or
> divulged by anyone except as provided in this article.

> B. The clerk shall cause the notes, tapes, and transcriptions or other evidence to
> be kept safely. Upon motion to the presiding judge, special counsel shall be
> permitted to review any of the evidence which was presented to the multi-
> jurisdiction grand jury, and shall be permitted to make notes and to duplicate
> portions of the evidence as he deems necessary for use in a criminal investigation
> or proceeding. Special counsel shall maintain the secrecy of all information
> obtained from a review or duplication of the evidence presented to the multi-
> jurisdiction grand jury, except that this information may be disclosed pursuant to
> the provisions of subdivision 2 of [Code] § 19.2-215.1. *Upon motion to the
> presiding judge by a person indicted by a multi-jurisdiction grand jury, similar
> permission to review, note, or duplicate evidence shall be extended if it appears
> that the permission is consistent with the ends of justice and is necessary to
> reasonably inform such person of the nature of the evidence to be presented
> against him, or to adequately prepare his defense.*

(Emphasis added).

Code § 19.2-215.9 was amended in 2014; however the changes do not alter our analysis of the
issues presented on appeal.

The trial court held a hearing on [petitioner]'s motion to dismiss the multi-jurisdictional grand jury indictments on May 11, 2012. The Commonwealth proffered to the trial court that a court reporter did not attend or record evidence presented during the proceedings before the multi-jurisdictional grand jury. The Commonwealth further represented that only Detective Goldman presented evidence at the hearing before the multi-jurisdictional grand jury and that "Detective Goldman's presentation of that evidence is not the same as a witness being called in to testify, thus not requiring a transcript." The trial court denied [petitioner]'s motion stating in part that the "remedy of dismissal of the charge is [not] part of [Virginia's] statute, and the [c]ourt would have to find some prejudice to the defense, and have to find that it was some act of the Commonwealth that was not generally by malfeasance or something." The trial court did, however, order a bill of particulars concerning the charges certified by the multi-jurisdictional grand jury against [petitioner].

On June 4, 2012, a City of Richmond grand jury indicted [petitioner] on two counts of abduction for pecuniary benefit in violation of Code § 18.2–48, one count of robbery in violation of Code § 18.2–58, and three counts of use of a firearm in the commission of a felony in violation of Code § 18.2–53.1. The indictments from both grand juries were consolidated for trial and a jury trial on all of the charges was held on October 9, 2012.

At trial, Chaquetta Bowles testified that around 9:30–10:00 p.m. on March 16, 2012, Oliver brought her to his home on the south side of the City of Richmond. Bowles testified that while she was upstairs, Oliver asked her if she was hungry and offered to get her food. A few minutes later, Oliver backed into the bedroom, in which Bowles was sitting, with his hands in the air saying "don't shoot." Bowles testified that she then saw [petitioner] holding a gun and [petitioner] told her "bitch, drop the phone and walk over to me." [Petitioner] then demanded money and a "chopper" from Oliver.[2] Oliver retrieved money from his closet and gave it to [petitioner] and told him that the "chopper" was downstairs in the oven. [Petitioner] grabbed Bowles by the back of her hair and put the gun to her head as he walked her and Oliver downstairs where Bowles reached into the oven and handed him the "chopper."

At that point, Bowles testified that Oliver said to [petitioner] "I can't believe you're doing this to me. I take care of you and your family." [Petitioner] replied "I'm hurtin. I'm hurtin" and then shot Oliver twice. [Petitioner] then turned and pointed the gun at Bowles. Oliver dove on top of [petitioner] in an effort to shield Bowles from [petitioner] while Bowles ran upstairs and locked herself in a closet. She then heard multiple gunshots. Bowles then heard Oliver call her name. At that point, Bowles ran downstairs and saw Oliver going out the front door. Bowles ran to a neighbor's house and yelled at them to call 911. Later that day, Bowles looked at photographs and identified [petitioner] as the person who shot Oliver.

---

[2] "Chopper" is slang for a big gun.

> Officer Burdette also testified and stated that he responded to the scene and
> observed Oliver holding the handrails on his porch, covered in blood. Officer
> Burdette testified that he asked Oliver what happened and Oliver responded that
> "Mikey. Rock's brother [shot him and took his gun]." Officer Burdette asked
> Mikey's last name and Oliver responded "Robinson." Shortly thereafter, Oliver
> died from his gunshot wounds.

Robinson, 762 S.E.2d at 807-09. The appellate court also noted that the evidence presented at

trial established "that the bullets recovered from the victim's body came from one gun," and "that

[petitioner] was wearing a disguise when he was arrested." Id. at 812.

Petitioner appealed, and the Virginia Court of Appeals granted the appeal on the one

following issue:

> [Petitioner] allege[d] that the trial court "erred in failing to dismiss the multi-
> jurisdictional grand jury indictments for murder and use of a firearm due to the
> violation of . . . Code § 19.2–215.9, which violated [petitioner]'s rights to due
> process and to prepare his best defense."

Id. On September 16, 2014, the Virginia Court of Appeals affirmed petitioner's convictions and

found that petitioner "was not prejudiced by the trial court's failure to comply with the

requirements set forth in Code § 19.2-215.9 and, thus, his constitutional right to due process was

not violated." Id. The Supreme Court of Virginia refused petitioner's petition for further appeal

on March 12, 2015. Rec. No. 141489.

Petitioner never filed a state habeas petition; however, on March 16, 2016, he filed the

instant, timely writ for a petition of federal habeas corpus. See Dkt. No. 1. In his petition, he

raises only one claim: "Violation Sixth (6) Amendment and Fourteenth Amendment grand jury

indictment." Id. at 6. In support of this claim, petitioner attached a handwritten memorandum,

wherein he specifies that he believes his "Sixth Amendment right to put forth his best defense"

and his Fourteenth Amendment right to due process were violated by the lack of a court reporter

in the multi-jurisdictional grand jury that indicted him for murder and one of the four counts of

use of a firearm in the commission of a crime. Dkt. No. 1, Memo. at 1-3. He further states that,

4

"The regular grand jury indictments [for robbery, two counts abduction, and three counts use of a firearm in commission of a felony] are not relevant not addressed in this petition." Id. at 3.

Respondent does not contest that petitioner has satisfied the exhaustion requirement set forth in 28 U.S.C. § 2254(b) by presenting his claim to the Supreme Court of Virginia in his direct appeal.

## II. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas corpus petition, a federal court may not grant the petition on that particular claim unless the state court's adjudications were contrary to, or an unreasonable application of, clearly established federal law, or were based on an unreasonable determination of the facts presented at the trial.  28 U.S.C. § 2254(d)(1)-(2).  This test erects a "formidable barrier to federal habeas relief" for claims adjudicated on the merits. Burt v. Titlow, 134 S. Ct. 10, 16 (2013).  Under this standard, for a state prisoner to obtain habeas relief, he "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  A state court determination violates the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413.  When reviewing the state court's findings, the federal court is limited to the record before the state court at the time of the decision. See Cullen v. Pinholster, 563 U.S. 170 (2011).

Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Importantly, this standard of reasonableness is an objective one, and does not allow a federal court to review simply for plain error. Id. at 409-10; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003). In addition, a federal court should review the state court determination with deference; the court cannot grant the writ simply because it concludes that the state court incorrectly determined the legal standard. See Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (internal citations omitted). A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

### III. Analysis

Petitioner asserts a "violation [of the] Sixth (6) Amendment and Fourteenth Amendment grand jury indictment." Dkt. No. 1 at 6. Specifically, he complains that the Virginia state courts erred in finding Code § 19.2-215.9 directory rather than mandatory, in finding the primary purpose of the statute to be for the grand jury's benefit, and in failing to read a remedy of dismissal into the statute and apply it in this case. Dkt. No. 1, Memo. at 11-15. Petitioner's claim is meritless and must be dismissed.

The Virginia Court of Appeals[3] addressed this claim, in detail, as follows:

---

[3] Where, as here, the highest state court summarily denies an appeal, this Court must apply its review to the last reasoned decision of the state courts. Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991).

[Petitioner] argues that Detective Goldman's statements before the multi-jurisdictional grand jury were testimonial in nature and that the Commonwealth's failure to comply with Code § 19.2-215.9 by providing a court reporter to transcribe the multi-jurisdictional grand jury proceedings violated [petitioner]'s constitutional due process rights by denying him the opportunity to prepare and present his best defense.[4] The Commonwealth concedes that the requirements of Code § 19.2-215.9 were not met in this case. For the following reasons, we conclude that [petitioner]'s constitutional challenge fails.

An appellate court reviews "a circuit court's interpretation of statutes de novo." Paugh v. Henrico Area Mental Health & Developmental Servs., 286 Va. 85, 88-89, 743 S.E.2d 277, 279 (2013) (citing Jones v. Williams, 280 Va. 635, 638, 701 S.E.2d 405, 406 (2010)).

Subsection A of Code § 19.2-215.9 provides in relevant part that "A court reporter *shall* be provided for a multi-jurisdiction grand jury to record, manually or electronically, and transcribe all oral testimony taken before a multi-jurisdiction grand jury . . . . " (Emphasis added). Subsection B then provides that:

> Upon motion to the presiding judge by a person indicted by a multi-jurisdiction grand jury, ... permission to review, note, or duplicate evidence *shall be extended* if it appears that the permission is consistent with the ends of justice and is necessary to reasonably inform such person of the nature of the evidence to be presented against him, or to adequately prepare his defense.

(Emphasis added).

The use of the word "shall," however, does not ipso facto require this Court to draw the conclusion that the statute is mandatory, rather than directory. " 'While

---

[4] Article I, Section 8 of the Constitution of Virginia provides, in part, "That in criminal prosecutions a man hath a right . . . to call for evidence in his favor." This right is central to the proper functioning of the criminal justice system. It is designed to ensure that the defendant in a criminal case will not be unduly shackled in his effort to develop his best defense. Massey v. Commonwealth, 230 Va. 436, 442, 337 S.E.2d 754, 757 (1985). In Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967), the United States Supreme Court discussed the importance of a defendant's right to present his version of the facts:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

violations of state procedural statutes are viewed with disfavor, . . . neither the Virginia Supreme Court nor the legislature has adopted an exclusionary rule for such violations . . . where no deprivation of the defendant's constitutional rights occurred.' " West v. Commonwealth, 16 Va. App. 679, 692, 432 S.E.2d 730, 738 (1993) (quoting Thompson v. Commonwealth, 10 Va. App. 117, 122, 390 S.E.2d 198, 201 (1990)).

For example, in Butler v. Commonwealth, 264 Va. 614, 570 S.E.2d 813 (2002), a juror became ill at the beginning of appellant's trial and appellant moved for a mistrial, which the trial court granted. Id. at 616, 570 S.E.2d at 814. As a result, the trial court had to prepare a new jury panel and provide a list of the new panel members to counsel. Id. at 616-17, 570 S.E.2d at 814-15. The trial court provided counsel a recess but denied appellant's request for a continuance based on his argument that Code § 8.01-353 required that a copy of the jury panel be made available to counsel at least forty-eight hours prior to trial and that he needed more time to prepare for the new panel.[5] Id. at 617, 570 S.E.2d at 815. The Supreme Court affirmed the trial court and held that the language in Code § 8.01-353 was directory rather than mandatory because Code § 8.01-353 did not " 'manifest[ ] a contrary intent.' " Id. at 619, 570 S.E.2d at 816. In so holding, the Court noted that " '[a] statute directing the mode of proceeding by public officers is to be deemed directory, and a precise compliance is not to be deemed essential to the validity of the proceedings, unless so declared by statute.' " Id. at 619, 570 S.E.2d at 816 (quoting Nelms v. Vaughan, 84 Va. 696, 699, 5 S.E. 704, 706 (1888)). The Court observed that Code § 8.01-353 contained "no prohibitory or limiting language" nullifying the result of a trial in which counsel did not receive a copy of the jury panel list in the requisite time frame or preventing the trial court from proceeding to trial in such circumstances. Id. at 619-20, 570 S.E.2d at 816. Therefore, the Court held that "a failure to comply with those provisions [was] not a per se basis for reversing a trial court's judgment in either a civil or a criminal case." Id. at 620, 570 S.E.2d at 816.

Thus, the Court held that adherence to Code § 8.01-353 was required to the extent necessary to insure due process and " 'any determination whether a [party] has suffered prejudice constituting a denial of due process must be made on a case-by-case basis.' " Id. at 620, 570 S.E.2d at 816-17 (quoting Jamborsky v. Baskins, 247 Va. 506, 511, 442 S.E.2d 636, 639 (1994)). In Butler, because appellant did not demonstrate that he suffered any prejudice that constituted a denial of due process as a result of the trial court's ruling, the Court held that the trial court did not abuse its discretion by denying appellant's motion for a continuance when the jury panel was reconstituted. Id. at 620–21, 570 S.E.2d at 817.

---

[5] At the time that Butler was decided, Code § 8.01-353 provided in relevant part that "Upon request, the clerk . . . shall make available to all counsel of record in that case, a copy of the jury panel to be used for the trial of the case at least forty-eight hours before the trial." Butler, 264 Va. at 618, 570 S.E.2d at 815. In 2010, Code § 8.01-353 was amended and "forty-eight hours" was changed to "three full business days."

We conclude that the analytical construction of Code § 8.01-353 discussed in Butler, leads us to determine that the requirements set forth in Code § 19.2–215.9 for the recording of multi-jurisdictional grand jury proceedings are directory rather than mandatory. The purpose of requiring recordation of any grand jury proceedings supports this holding.

In Vihko v. Commonwealth, 10 Va. App. 498, 503, 393 S.E.2d 413, 416 (1990), this Court discussed the purpose of recording grand jury proceedings:

> While the better practice is to record all proceedings before the grand jury, other than their deliberations, the primary function of recording the proceedings is to maintain a record and transcript for the use, benefit, and convenience of the grand juries. The record is not maintained to provide those under investigation with a record to assure that all formalities attendant to the proceedings have been followed.

In Vihko, appellant alleged that a forensic accountant presented his report to the special grand jury without having been sworn or without the grand jury having that part of the proceedings recorded as required by Code § 19.2-212.[6] Id. The Court, noting that the record failed to establish that the special grand jury received and considered unsworn or unrecorded evidence from a witness, held that it "need not address whether a showing of such procedural violations would warrant review of the conviction or indictment without demonstrating prejudice." Id. at 503, 393 S.E.2d at 417. Thus, in the instant matter, while the statute may provide an ancillary benefit to defendants under limited circumstances, its purpose is for the benefit of the grand juries, not individual defendants.

This position is also supported by other Code sections within Title 19.2 and case law related to grand jury proceedings which indicate that defects in grand jury

---

[6] Code § 19.2-212 provides for the same recording, protection, and dissemination of transcripts of special grand jury proceedings as Code § 19.2-215.9 does for multi-jurisdictional grand juries. Code § 19.2-212 states in relevant part:

A. A court reporter shall be provided for a special grand jury to record, manually or electronically, and transcribe all oral testimony taken before a special grand jury, but such reporter shall not be present during any stage of its deliberations.

\* \* \* \* \* \*

B. . . . Upon motion to the presiding judge by a person indicted after a special grand jury investigation, similar permission to review, note or duplicate evidence shall be extended if it appears that the permission is consistent with the ends of justice and is necessary to reasonably inform such person of the nature of the evidence to be presented against him, or to adequately prepare his defense.

procedure are not necessarily constitutional violations.[7] Moreover, other courts have reached similar conclusions regarding procedural defects in grand jury proceedings and have declined to find such defects constitutional violations absent some showing of prejudice.[8]

Additionally, Code § 19.2-215.9, like Code § 8.01-353 analyzed in Butler, "contains no prohibitory or limiting language that prevents a trial from proceeding when circumstances necessitate [that a transcript is unavailable] . . . . Nor is there any language that renders the result of a trial in that situation invalId." 264 Va. at 619-20, 570 S.E.2d at 816. Therefore, consistent with the analytical framework advanced in Butler, we hold that a failure to record the multi-jurisdictional grand jury proceedings alone is "not a per se basis for reversing a trial court's judgment...." Id. at 620, 570 S.E.2d at 816. Compliance with Code § 19.2-215.9 "is required to the extent necessary to insure due process [and] . . . 'any determination whether a [party] has suffered prejudice constituting a denial of due process must be made on a case-by-case basis.' " Id. at 620, 570 S.E.2d at 816-17 (quoting Jamborsky, 247 Va. at 511, 442 S.E.2d at 639).

While the Commonwealth conceded the procedural defect in this case, and the trial court plainly failed to comply with the recording requirements set forth in Code § 19.2-215.9, the failure to record the grand jury proceedings and provide a transcript to defense counsel did not prejudice [petitioner] in any way that denied him due process. [Petitioner] has not pointed to one single viable basis for suggesting a denial of due process other than arguing for a strict interpretation of the term "shall" in the statutory scheme. The Commonwealth provided [petitioner] with a bill of particulars due to the absence of a transcript, and " '[t]he purpose of a bill of particulars is to state sufficient facts regarding the crime to inform an accused in advance of the offense for which he is to be tried. He is entitled to no more.' " Swisher v. Commonwealth, 256 Va. 471, 480, 506 S.E.2d 763, 768 (1998) (quoting Hevener v. Commonwealth, 189 Va. 802, 814, 54 S.E.2d 893, 899 (1949)). This is precisely the information [petitioner] contends he was not privy to as a result of the failure to record the multi-jurisdictional grand

---

[7] See Code § 19.2-226 (listing non-fatal defects in indictments); Reed v. Commonwealth, 281 Va. 471, 481, 706 S.E.2d 854, 859-60 (2011) (list of non-fatal defects in indictments in Code § 19.2–226 is not exhaustive); Livingston v. Commonwealth, 184 Va. 830, 836, 36 S.E.2d 561, 564 (1946) (indictment requirement is statutory not constitutional and as long as an indictment informs the accused of the nature and character of the crime charged against him, it is sufficient).

[8] "Failure to transcribe grand jury proceedings and provide the accused with a transcript of grand jury testimony is not a denial of due process. Nor is it an unconstitutional practice or an invasion of a constitutional right." State v. Levesque, 281 A.2d 570, 572 (Me. 1971) (citations omitted). See also Baker v. United States, 412 F.2d 1069, 1073 (5th Cir. 1969) ("There is no constitutional requirement that grand jury proceedings be transcribed."); Loux v. United States, 389 F.2d 911, 916 (9th Cir.1968); United States v. Hensley, 374 F.2d 341, 352 (6th Cir. 1967); Schlinsky v. United States, 379 F.2d 735, 740 (1st Cir. 1967); Maestas v. United States, 341 F.2d 493, 496 (10th Cir. 1965); United States v. Cianchetti, 315 F.2d 584, 591 (2d Cir. 1963); United States v. Labate, 270 F.2d 122, 123–24 (3d Cir.1959).

jury proceedings.[9] Additionally, Detective Goldman was the only person who testified before the grand jury and he did not testify at [petitioner]'s trial. Further, the trial court entered a traditional criminal discovery order and the Commonwealth provided that discovery material to [petitioner]. Therefore, to the extent [petitioner] argues that he was not provided with material to assist him in setting forth his best defense, his argument is unpersuasive.

[Petitioner] was convicted based on a wealth of evidence including eyewitness testimony from Ms. Bowles, testimony from Officer Burdette who responded to the scene and took the victim's dying declaration that "Mikey [Robinson,] Rock's brother" shot him, other witness testimony (some family members of [petitioner]) that [petitioner] was the person to whom the victim referred, testimony from the crime scene technician and a firearms expert that the bullets recovered from the victim's body came from one gun, and testimony that [petitioner] was wearing a disguise when he was arrested. [Petitioner] was clearly provided the "right to confront the prosecution's witnesses for the purpose of challenging their testimony, [and] the right to present his own witnesses to establish a defense." Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967).

For these reasons, we hold that Code § 19.2-215.9 is directory, not mandatory, and that [petitioner] was not prejudiced by the trial court's failure to comply with the requirements set forth in Code § 19.2-215.9 and, thus, his constitutional right to due process was not violated.

Robinson, 762 S.E.2d at 809-12.

Petitioner's primary argument is that the Virginia state courts improperly interpreted Virginia Code § 19.2-215.9. In conducting habeas review, this Court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Although petitioner invokes the Sixth and Fourteenth Amendments, this does not automatically grant this Court authority to overrule the state court's determination. A state evidentiary or procedural rule "does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar." Spencer v. Texas, 385 U.S.

---

[9] We note that there is no evidence in the record that [petitioner] objected to the sufficiency of the bill of particulars provided by the Commonwealth.

554, 564 (1967) (internal citations omitted).  Rather, due process considerations control state rules only if the rules "undermined fundamental elements of the defendant's defense."  United States v. Scheffer, 523 U.S. 303, 315 (1998).

Petitioner has failed to establish that the state courts unreasonably applied clearly-established federal law or unreasonably determined any facts.  In fact, petitioner sought the grand jury transcripts merely as a means of discovery – "to review the evidence" against him.  Dkt. No. 10, Ex. A 5/11/12 Tr. at 5.  However, it is well established that there is no constitutional right to discovery.  Weatherford v. Bursey, 429 U.S. 545, 559 (1977).  Similarly, defendants have no constitutional right to have their grand jury proceedings transcribed.  See e.g., United States v. Howard, 433 F.2d 1, 2 (5th Cir. 1970) ("There is a a line of cases holding that grand jury minutes need not be kept.").

Petitioner's appeals to Brady v. Maryland, 373 U.S. 83 (1963), and to his general right to a defense, were properly denied by the Virginia state courts.  Petitioner has never identified any Brady information to which he was entitled, but did not receive.  Moreover, petitioner was never prevented from cross-examining government witnesses or from presenting his own witnesses.

Finally, petitioner has failed to establish that he was prejudiced in any way.  A transcript of the sole grand jury witness' testimony would not have generated impeachment evidence, as none of the trial witnesses previously testified before the grand jury and the detective who testified before the grand jury never testified at trial.   Robinson, 762 S.E.2d at 811-12.  Additionally, the Commonwealth provided petitioner with a bill of particulars that, based upon his lack of objection, appeared to be sufficient.  Id.  Because he has failed to properly identify any federal right that he was denied, and because he has failed to establish any prejudice he suffered, petitioner has failed to show that the state courts violated his Sixth and Fourteenth

Amendment protections.   Thus, the state court ruling is entitled to deference, and petitioner's claim must be dismissed.

## IV. Conclusion

For the above stated reasons, this petition will be dismissed.   An appropriate Order shall issue.

Entered this ___30___ day of ___August___ 2016.

Alexandria, Virginia

_____/s/_____
Anthony J. Trenga
United States District Judge